[No. 8,126.—Department One.]
Feb. 27, 1882.

## L. NESSLER ET AL. v. ORSON BIGELOW.

PATENT — MINERAL LANDS — STATUTE OF LIMITATIONS — CONSTRUCTIVE TRUST.—Action to quiet title. The plaintiff deraigned title under a patent of the United States issued within five years of the commencement of the action. The defendants pleaded title by the statute of limitations; and also facts which they contended constituted the plaintiff trustee for them of the title; but on this issue the Court found against them.

*Held*, as to the latter defense, that the finding was justified by the evidence, and as to the former that the statutes could not avail the defendants against the patentee.

APPEAL from the judgment for the plaintiff and from an order denying a new trial in the Superior Court of the County of Sierra. HOWE, J.

*Gale* and *Jones*, for Appellants.

It is a part of the history of this State that, in the mining section one party may own and occupy the surface of land for building and agricultural purposes, while another may own and occupy the same land for mining purposes. It is a fact that a majority of the villages and towns in Sierra County (in which the premises in dispute are situated) are located upon mineral land, owned and used by others than the owners of the surface, and the improvements thereon. Until about two years ago, when the inhabitants of Downieville availed themselves of the town site acts, the whole of that town, including the Court House and other public buildings, was built upon mining claims owned and worked by miners, who made no claim to the buildings and improvements on the surface. Great and important property rights of this character, amounting in value to millions of dollars, have grown up, and have always been protected in this State.

Now, inasmuch as the officers of the Land Department have from the beginning, and still do refuse to hear or determine any adverse claims, except as between adverse claimants for mining purposes only, and as the owners of the improvements upon the surface—no matter how valuable—have no .standing in the Land Office, it follows that the mining claim-

ant can obtain a patent to the land. Query—Does the holder of a patent obtained under such circumstances acquire an absolute right to the valuable improvements and homes of those who up to the issuance of the patent owned and occupied the surface ? Under the recent decisions of this Court and of the United States Supreme Court, we say that he does not, but, on the contrary, having obtained a legal title to the property of another, he holds it in trust for him. (*Atherton* v. *Fowler,* 96 U. S. 519; *Hosmer* v. *Wallace,* Id. 597; *Trenouth* v. *San Francisco,* Id. 180; *Davis* v. *Scott,* 6 P. C. L. J. 699; *Hosmer* v. *Duggan,* Id. 615.)

The above question is involved in this case, and the appellants endeavored in vain to have the Court below find upon the issues raised by the pleadings and determine their rights. The respondent claims a quartz ledge with two hundred and fifty feet of land on each side thereof. The ledge is in the bedrock and beneath the surface. The appellants (except Nessler, who claims only an easement) for many years resided on and cultivated the small tracts claimed by them, and held the same peaceably and adversely, and as against the respondent, they had the better right, at least up to the time plaintiff obtained his patent. The tracts claimed by appellants are within the lines of respondent's claim, but have never interfered with the working of the ledge.

The respondent applied for a patent, and as the appellants made no claim to any part of the land for mining purposes, they could not file any adverse claim, or contest the claim of respondent in the Land Office, and in due time he obtained a patent pursuant to the Mining Acts of Congress, and under it he claims the homes and improvements of appellants.

Our third point is that the Court refused to find upon the most important issue, viz., as to our adverse possession. It is true it finds that there has been no adverse possession since the date of the patent. Now, we claim that we built upon and inclosed the tracts we now claim, and for more than five years before plaintiff had any right to the land he now claims under his patent, we had cultivated and used the same peaceably and adversely to all. In other words, we were entitled to the possession as against all the world, except the United States, at the time plaintiff obtained his patent. The Court

refused to find on this all-important point further than to say, against the admissions of the pleadings and the evidence, that we did not hold adversely after the date of the patent.

The Court ignored the very point on which defendants relied, viz.: Did we by reason of prior appropriation or adverse possession have a better right to the premises claimed up to and at the time plaintiff applied for a patent? Had the Court found, for instance, that our possession was of such a character that in an action between the parties at any time before his application for a patent, the defendants would be entitled to recover; then the legal question which we attempted to raise, and on which we rely, viz., What was the effect of the patent upon our rights? would be fairly before the Court.

In conclusion, we will add that the defendants, like thousands of others, had settled upon and built themselves homes on small tracts of the public mineral domain. It was done under the acquiescence and encouragement of the Government. Such rights the Government is in honor bound to respect, and, as we believe, will respect.

It never was intended that one man should reap the fruits of another's labor. It may be true that, because small tracts of mineral land are occupied as homes, it should not prevent the Government from disposing of its mineral lands; but, under the familiar rule in equity, where one party acquires the legal title to property in which there is an interest, paid for, created, and owned by another, he will hold the title in trust for such other party to the extent of his interest; we think the rights of all concerned in cases like this can be respected and protected by the Courts.

*M. Farley,* for Respondent.

Defendants, who had full notice of plaintiff's application for patent, should have availed themselves of their right to make an adverse claim in the United States Land Office (defendants admit there was no fraud in plaintiff's action in obtaining his patent, and no promises made them).

Defendants should have put in their adverse claim before the Land Office.

One party can not hold another as trustee, when he has

failed to comply with all the provisions of the law on which he bases his claims, unless he was prevented by plaintiff by some unfair means from so doing. He must show that he possessed all the qualifications, performed all the acts, and complied with all the conditions required by law to entitle him to pre-empt, or to hold, or to locate, and that he proved these facts by competent testimony at a trial in the Land Office. Defendant did none of these.

The defendants in this action are in no privity with the United States; and possess no claim, legal or equitable, to the lands they claim. The proffered offer of the Government to protect them if they put in an adverse claim, according to Sections 2325–2326, of the Revised Statutes, has never been accepted by them. (*Doll* v. *Meador*, 16 Cal. 326.)

It was not necessary for the Court to find on the question of defendant's adverse possession prior to plaintiff's patent; the Court found, they failed to put in any adverse claim to plaintiff's application for a patent, and that they were not induced to refrain from so doing by plaintiff in any way, and that was all that was necessary.

Ross, J.:

Action to quiet title—plaintiff relying on a patent from the Government, issued March 30, 1876, under and by virtue of the mining laws. In their answer the defendants admit that they, respectively, claimed interests in certain separate and distinct portions of the premises embraced in the patent, adverse to the plaintiff; and aver, that for more than fifteen years immediately preceding the commencement of the action, they had, respectively, held the adverse possession of the respective portions so claimed. But they could not have held adversely to the Government, and the action having been commenced within five years after the issuance of the patent, the statute of limitations could not avail them against the patentee.

In their answer, the defendants affirmatively aver that the plaintiff's patent was duly obtained, and that they had notice of his application to purchase the land, but charge, that for the purpose of preventing the defendants from contesting the plaintiff's application to purchase the premises, he, plaintiff,

fraudulently represented to them, and each of them, that he only wanted the premises for mining purposes, and that he would never disturb their respective possessions; that the title he should acquire should inure to their benefit so far as their respective tracts were concerned, and that on obtaining the patent he would convey such title to them; that relying upon these representations, the defendants took no steps to prevent the plaintiff from acquiring the legal title to the whole of·the premises, but that they continued to reside upon, and at great expense to improve the respective portions claimed by them, with the full knowledge, acquiescence, consent, and approval of the plaintiff, until shortly before the commencement of this action, when the plaintiff for the first time refused to recognize any right on the part of defendants; that nearly the entire value of the premises claimed by the defendants consists in the improvements made by them; that defendants have at all times been, and now are, ready and willing and able to pay to plaintiff their just ·and proportionate share of the costs and expenses incurred by him in obtaining the patent, etc.

Issues of the fact were raised by the plaintiff on the matters thus set up by the defendants, and which they contended constituted the plaintiff trustee for them of the title to the respective portions of the premises claimed by them, which issues were found upon by the trial Court against the defendants, on evidence which clearly justified the findings.

Indeed, we find in the statement on motion for a new trial the following: " The defendants all *admit* that the plaintiff never at any time made to them any promises to make deeds or deed to them if they would not put in an adverse claim to his application for a patent, and that he never held out any inducements· to them to prevent them from putting in adverse claims and opposing his application for a patent."

The other assignments of error we have examined, but do not find that any of them call for an interference at our hands with the action of the Court below.

Judgment and order affirmed.

Myrick and McKinstry, JJ., concurred.